IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BIJOULETTE WHITE,

                Plaintiff,

v.

TIMOTHY SHAWN GALLOWAY,

                Defendant.

OPINION and ORDER

24-cv-721-jdp

---

This is a civil suit for injunctive relief under the Immigration and Naturalization Act, 8 U.S.C. § 1183a. Plaintiff Bijoulette White seeks to enforce the provisions of an I-864 affidavit of support in which her ex-husband, defendant Timothy Galloway, agreed to maintain White at an income of at least 125 percent of the federal poverty guidelines. White resides in Texas, where the parties lived and subsequently divorced. But she sued Galloway in this court because he was temporarily living with his father in Wisconsin for a period after their separation.

Galloway moves to dismiss White's claim for failure to state a claim and for improper venue. Galloway moves in the alternative for the court to transfer the case to the Eastern District of Texas. Galloway disputes White's allegations that he has not provided financial support. Galloway asserts that his domicile is in Texas and that he has been forced to stay with family and friends in other states since the separation because he has continued paying the mortgage on the marital residence and cannot afford to pay for his own housing.

The court will deny Galloway's motion to dismiss for failure to state a claim because White plausibly alleges that he breached the affidavit of support. But the court will grant Galloway's motion to transfer the case to the United States District Court for the Eastern District of Texas because it is a more convenient forum with stronger connections to this case.

ALLEGATIONS OF FACT

The following allegations are taken from the complaint and are accepted as true for the purpose of defendant's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). The court will discuss additional facts concerning defendant's motion to dismiss for improper venue in its analysis of that issue.

In February 2016, Defendant Timothy Galloway petitioned to secure a fiancée visa for plaintiff Bijoulette White, who is a citizen of the United Kingdom. The petition was approved, and White arrived in the United States in October 2016. Galloway and White were married on December 28, 2016. During their marriage, they lived together in Texas.

In January 2017, the parties applied for White to become a legal resident in the United States. As part of White's application to adjust her immigration status, Galloway signed an affidavit of support in which he agreed to maintain White's income at 125 percent of the poverty line. White's application was approved, and she was granted conditional legal permanent resident status on January 26, 2018.

In November 2022, White suffered a stroke. In 2023, the parties began divorce proceedings and executed an agreed decree of divorce on October 19, 2023. Since their separation, White has resided in their martial residence in Texas, and Galloway has stayed with friends and family in other states, including with his father in Boulder Junction, Wisconsin and with friends in Minnesota.

White has been unemployed with no income since the parties' separation. In October 2024, she brought this action against Galloway to enforce his affidavit of support and recover the amount required to maintain her income at 125 percent of the poverty line for her

household size beginning in November 2022. White also seeks a declaration that she is entitled to continued financial support as set out in the affidavit.

ANALYSIS

Galloway moves to dismiss White's for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for improper venue under Rule 12(b)(3). In the alternative to his motion to dismiss for improper venue, Galloway moves for this case to be transferred to the District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a). The court will first address Galloway's contention that White fails to state a claim for enforcement of an affidavit of support executed under the Immigration and Nationality Act and then address the issue of venue.

A. Failure to state a claim

The question on a motion to dismiss based on Rule 12(b)(6) is whether the complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

White brings a straightforward claim to enforce Galloway's I–864 affidavit of support. "The Immigration and Nationality Act. . . authorizes suit 'in any appropriate court . . . by a sponsored alien' 'to enforce an affidavit of support executed under' section 1183a(a)." *Liu v. Mund*, 686 F.3d 418, 419 (7th Cir. 2012) (quoting 8 U.S.C. § 1183a(e)). Under 8 U.S.C. § 1183a(c), the sponsored immigrant may pursue damages, an order for specific performance, and payment of legal fees and other costs of collection. An affidavit of support is enforceable

3

"until the sponsored immigrant: (1) becomes a citizen of the United States; (2) has worked or can be credited with 40 qualifying quarters of work under title II of the Social Security Act; (3) ceases to be a lawful permanent resident and departs the United States; (4) obtains in a removal proceeding a grant of adjustment of status as relief from removal; or (5) dies." *Erler v. Erler*, 824 F.3d 1173, 1176 (9th Cir. 2016) (citing 8 C.F.R. § 213a.2(e)(2)(i) and 8 U.S.C. § 1183a(a)(2)–(3)). These termination conditions are set out in the Form I-864, which also specifies that "Divorce does not terminate your obligations under Form I-864." Dkt. 29-1, at 9.

White alleges that Galloway executed an affidavit of support in which he agreed to maintain her income at 125 percent of the poverty line and that he has not provided financial assistance to maintain her income at that level since the couple separated in November 2022. Dkt. 29, ¶ 43. White specifically alleges that she has had no income for the years 2022 and 2023. *Id.*, ¶ 47. White also alleges that none of the conditions exist that would terminate Galloway's obligations under the affidavit of support. At this stage, these allegations of fact are sufficient to state a claim to enforce Galloway's I–864 affidavit of support.

Galloway contends that White's complaint is deficient for two reasons: (1) White did not allege that she has legal status in the United States and (2) White has not alleged "that her financial situation is such that she would be eligible for any means-test public benefits." Dkt. 34, at 21. Neither of these arguments is relevant to whether White states a claim.

Galloway's argument concerning White's residency status focuses on the requirements and procedures for immigrants who seek to become legal permanent residents through marriage to a United States citizen. Galloway contends that White fails to state a claim because she did not allege that she timely petitioned to have conditions on her residency status removed once she had been married for the requisite length of time. But Galloway does not cite any authority

4

for his assertion that White needs to be a lawful permanent resident to enforce his affidavit of support, and nothing in § 1183a or the implementing say that a sponsored immigrant must have permanent resident status to bring a claim to enforce an affidavit of support.

At least one other court has considered this issue and concluded that a sponsored immigrant with an expired green card may bring a claim to enforce an affidavit of support. In *Golipour v. Moghaddam*, the defendant contended that expiration of a sponsored immigrant's green card meant he was not liable for his obligations under the affidavit of support. 438 F. Supp. 3d 1290, 1297 (D. Utah 2020). The court held that the defendant's obligation was ongoing because "the expiration of an immigrant's lawful permanent resident status is not a terminating circumstance under the Form I-864's plain language." *Id.* The court reasoned that loss of lawful permanent resident status did not affect the plaintiff's claim because the affidavit specified that the "immigrant must no longer have lawful permanent resident status *and* depart the United States for a terminating circumstance to arise under the Form I-864." *Id.* The court agrees with this reasoning. Like the affidavit in *Golipour*, Galloway's affidavit itself specifies that loss of permanent resident status would terminate his obligations only if White had also departed the United States. Dkt. 29-1, at 9 (providing that obligations under a Form I-864 end if the sponsored immigrant "No longer has lawful permanent resident status and has departed the United States"). Whether White timely sought to have the conditions on her residency status removed has nothing to do with whether she states a claim to enforce Galloway's affidavit of support.

As for Galloway's contention that White's allegations about her financial situation are deficient, Galloway's arguments impermissibly rely on factual assertions from his own declaration rather than the allegations in White's complaint. White alleges that, "Since

5

November 2022, [her] income has been below 125% of the poverty line for her household size." Dkt. 29, ¶ 44. This is sufficient to state a claim under section 1183a(a) to enforce Galloway's promise to provide White "any support necessary to maintain . . . her at an income that is at least 125 percent of the Federal Poverty Guidelines for . . . her household size." Dkt. 29-1, at 8.

The court will deny Galloway's motion to dismiss based on failure to state a claim.

## B. Venue

Galloway contends that his domicile is in the Eastern District of Texas, not Wisconsin, and that this case should be dismissed for improper venue or transferred to the District Court for the Eastern District of Texas, pursuant to 28 U.S.C. § 1406(a). The parties dispute whether venue is proper in this district under § 1391(b)(2) based on Galloway living with his father in Boulder Junction for a majority of the time White alleges he failed to provide her financial support. In the alternative, Galloway contends that, even if venue is proper in this district, the case should be transferred to the Eastern District of Texas as the more convenient venue, pursuant to 28 U.S.C. § 1404(a).

Without deciding whether venue is proper in this district, the court concludes that venue is proper in the Eastern District of Texas because that is where Galloway contends that he is domiciled and where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). The federal transfer of venue statute, 28 U.S.C. § 1404(a), provides that a district court may transfer a civil action to another district court where the case could have been brought if transfer suits the convenience of the parties and witnesses and serves interest of justice. Section 1404(a) permits a "flexible and individualized analysis" that is not confined by a narrow or required set of considerations. *Research Automation, Inc. v.*

6

*Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). The burden is on Galloway to show, by reference to specific circumstances, that the transferee forum is clearly more convenient. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986).

### 1. Convenience of the parties and witnesses

In assessing the relative convenience of two venues, the court looks at each party's access to and distance from each forum, the location of material events, the availability and access to witnesses, and relative ease of access to sources of proof. *Research Automation,* 626 F.3d at 978. The general rule is that a plaintiff's choice of forum is entitled to deference. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981). But that deference is reduced when the material events did not occur in the plaintiff's chosen forum. *R.T.B. by & through Breault v. United States,* No. 19-cv-276-jdp, 2019 WL 6492826, at *1 (W.D. Wis. Dec. 3, 2019) (collecting cases).

Here, Wisconsin's sole connection to the case is that Galloway lived in the state for a portion of the time in which he was allegedly not providing White financial support. But in September 2024, Galloway left Wisconsin to stay with friends in St. Paul, and he has been living in Minnesota since then. Dkt. 36, ¶ 11. So the Western District of Wisconsin is not a convenient venue for any of the parties. In contrast, the Eastern District of Texas is where White currently resides. From the limited record in this case, it appears that the material events and non-party witnesses are located in Texas. Galloway's arguments in support of his motion to dismiss for failure to state a claim make it clear that Galloway disputes White's allegations that he has not provided her with financial support since their separation. Specifically, Galloway asserts that he has continued to pay the mortgage, property taxes, and homeowner's insurance for White's house in Texas as well as car loan payments for White's car. Dkt. 36, ¶ 8. Evidence about White's finances will be where she resides in Texas. *See e.g.*, Dkt. 36-6

7

(Interrogatory response from B. White listing Whole Health Wellness Centre in Flower Mound, Texas as her employer from August to October 2023). Galloway does not identify any specific witnesses, but he asserts that his defenses in this case will likely involve witnesses with knowledge of White's living situation, who are in Texas. Dkt. 40, at 9.

The court affords some consideration to White's choice of forum. But the central dispute in this case appears to be about the details of White's living situation in Texas. So it would be significantly more convenient to litigate the case in Texas, rather than a state where neither party lives or works.

2. Interest of justice

In the transfer analysis, the interests of justice concern "the efficient administration of the court system." *Research Automation, Inc.*, 626 F.3d at 978. Courts typically consider docket congestion and speed to trial in each forum, each court's familiarity with the relevant law, the desirability of resolving the controversy in each locale, and the relationship of each community to the controversy. *Id.*

Here, docket congestion and speed to trial do not tip significantly either way. On average, the Eastern District of Texas tends to get civil cases to trial slightly faster, but the median time from filing to disposition is a month and a half shorter in this court. The two courts have a similar number of cases pending per judgeship.

White's claim is brought under federal law, so familiarity with the law also does not weigh in favor of either venue.

As for the relationship between the local community and the controversy, Wisconsin's sole connection to this case is that Galloway lived with his father in the state for a period of time during which Galloway allegedly failed to provide Galloway financial support. Texas has

8

an interest in resolving a dispute about financial support provided to a member of its community. Any state or local government that would potentially be called on to provide White support is also a beneficiary of Galloway's affidavit of support. So this factor tips in favor of Texas.

Both the interests of justice and the convenience factors favor transfer, so the court will transfer this case to the Eastern District of Texas pursuant to § 1404(a).

## ORDER

IT IS ORDERED that:

1. Defendant Timothy White's motion to dismiss or transfer venue, Dkt. 33, is DENIED IN PART and GRANTED IN PART as follows:

    a. The motion to dismiss for failure to state a claim under Rule 12(b)(6) is DENIED.

    b. The motion to transfer the case is GRANTED.

2. This case is transferred to the United States District Court for the Eastern District of Texas under 28 U.S.C. § 1404(a).

Entered July 24, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge